IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| NORA RUIZ, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>BASS PRO GROUP LLC, and BPS DIRECT LLC, d/b/a BASS PRO SHOPS,<br><br>　　　　　　Defendants. | Case No.<br><br>Jury Trial Demanded |

## CLASS ACTION COMPLAINT

Plaintiff Nora Ruiz ("Plaintiff") brings this class action complaint against Bass Pro Group LLC and BPS Direct LLC, both doing business as Bass Pro Shops ("Bass Pro" or "Defendants"), on behalf of herself and all others similarly situated. Plaintiff makes the following allegations based upon personal knowledge as to her own actions and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1. Bass Pro is an outdoor and sporting goods retailer operating throughout the United States and having more than 40,000 employees. It operates its stores, restaurants, and resorts and conducts business under various trade names, including but not limited to Bass Pro Shops, Cabela's, White River Marine Group, Tracker Marine Group, Tracker Marine Boating Center, Fishing Holdings, and Big Cedar Lodge.

2. Upon information and belief, all regular employees and eligible dependents can receive health insurance coverage by participating in a medical plan sponsored and administered by Bass Pro. These medical plans operate under the plan name Bass Pro Group LLC Health and Welfare Benefit Plans (hereafter "the Plan").

3. For those employees and their dependents to participate in the Plan, they must declare whether they are a tobacco user. Those who do use tobacco products are required to pay an additional fee of $40 per week—or $2,080 per year—to maintain coverage.

4. Fees of this sort, frequently referred to as "tobacco surcharges", have proliferated in recent years. But to be legal, they must strictly comply with the terms of the Employee Retirement Income Security Act (ERISA), applied to medical plans by the Patient Protection and Affordable Care Act, and implementing regulations. Bass Pro did not do so, and therefore collected the tobacco surcharge in violation of the law and in violation of its duties to plan participants and the Plan.

5. More specifically, ERISA's anti-discrimination provisions prohibit any medical plan from charging an extra premium or fee based on any health status related factor, including tobacco use, unless that fee is part of a *bona fide* "wellness program". And to qualify as a compliant wellness program, a company must offer a "reasonable alternative standard", usually in the form of a smoking/tobacco cessation program, completion of which allows participants to avoid the surcharge.

6. Although Bass Pro encouraged its tobacco-using employees to complete a tobacco cessation program called Quit for Life, the completion of that program did not result in the surcharge being removed. Instead, a tobacco user could only avoid the surcharge if the participant ceased using tobacco products and then stayed tobacco-free for 90 days. As such, the company simply did not provide any alternative standard to its participants; instead, it required participants to meet the original standard—not being a tobacco user. Bass Pro's decision to charge a discriminatory fee without offering any form of a reasonable alternative standard is a plain violation of ERISA.

7. Additionally, even if offering a tobacco cessation program that required the tobacco user to be tobacco free could constitute a reasonable alternative standard (it cannot), a compliant wellness program's reasonable alternative standard must allow participants to receive the program's "full reward"; that is, avoid the surcharge for the entire plan year upon completion of

2

the alternative standard, and must provide notice that such an alternative program exists in every communication regarding the surcharge. This notice must also include a statement that recommendations of an individual's personal physician in formulating a reasonable alternative standard will be accommodated.

8. But a Bass Pro plan participant who ceased tobacco use would only be eligible to avoid the surcharge on a going-forward basis, and thus could not earn the "full reward"—*i.e.*, avoiding the surcharge for the entire plan year. Further, Bass Pro's plan materials used for communicating information about the surcharge with participants make no mention of an opportunity to earn the full reward for the entire plan year by completing a reasonable alternative standard. And those materials do not include a disclosure that the recommendations of an individual's personal physician would be accommodated. Thus, the surcharge violates ERISA's anti-discrimination requirements, and its collection by Bass Pro was and remains unlawful.

9. Nora Ruiz is a regular, full-time Bass Pro employee working as an outfitter support specialist who was required to pay the illegal tobacco surcharge to maintain health insurance coverage. She brings this lawsuit on behalf of herself and all similarly situated plan participants and beneficiaries, seeking to have these unlawful fees returned, and for plan-wide relief under 29 U.S.C. § 1109.

## PARTIES, JURISDICTION, AND VENUE

10. Plaintiff Nora Ruiz is a citizen of the state of Missouri. At all times relevant to this suit, she has been employed by Bass Pro within the State of Missouri and has paid the Plan's premiums and tobacco surcharge within the State of Missouri.

11. Defendant Bass Pro Group LLC is a limited liability company conducting business under the name Bass Pro Shops. It is organized under the laws of the State of Delaware and has its principal place of business in Springfield, Greene County, Missouri.

12. Defendant BPS Direct LLC is a limited liability company conducting business under the name Bass Pro Shops. It is organized under the laws of the State of Delaware and has its principal place of business in Springfield, Greene County, Missouri.

13. At all times relevant to this lawsuit, Defendants operated the Bass Pro Group LLC Health and Welfare Benefit Plans (hereafter "the Plan"), which were available for Bass Pro employees and their dependents. The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

14. Plaintiff is a participant in the Plan pursuant to 29 U.S.C. § 1102(7).

15. This Court possesses subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. This Court also possesses subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: (1) there are at least 100 class members; (2) the amount in controversy exceeds$5,000,000, exclusive of interest and costs; and (3) Defendants and at least one class member are citizens of different states, and/or are a citizen or subject of a foreign state, and at least one class member is a citizen of a state.

16. This Court possesses personal jurisdiction over Defendants in this case because their principal place of business is in Missouri and are thus "at home" within the state. Additionally, the claims of Plaintiff and all others similarly situated arise from the acts and omissions of Defendants with respect to their activities and conduct concerning Plaintiff within the state of Missouri, and Defendants have purposefully availed themselves of the privilege of conducting business within the state of Missouri. Further, ERISA authorizes nationwide service of process. 29 U.S.C. § 1132(e)(2).

17. Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because this is the District where Defendants administer and sponsor the Plan and where Defendants' unlawful acts occurred.

## FACTUAL ALLEGATIONS

a. **Bass Pro's Tobacco Surcharge is a *Prima Facie* Violation of ERISA's Anti-Discrimination Rule.**

18. As a baseline rule, and to broaden access to affordable health insurance coverage, the Patient Protection and Affordable Care Act amended ERISA to prohibit any health insurer or

medical plan from discriminating against any participant in providing coverage or charging premiums based on a "health status-related factor", including the use of tobacco. Pursuant to this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

19. On its face, Bass Pro's tobacco surcharge violates this provision. Plaintiff and all others similarly situated were, for plan years 2023 and earlier required to pay an additional "premium or contribution" of $30 per week, or $1,560 per year, based on a "health status-related factor", that being their use of tobacco products. For plan year 2024, that additional charge was raised to $40 per week, or $2,080 per year.

20. Specifically, at all times relevant to this lawsuit, pursuant to Bass Pro's enrollment rules for the Plan, any employee or covered dependent who used use any form of tobacco or vaping products were required to declare themselves to be tobacco users as part of the enrollment process and were subsequently required to pay the tobacco surcharge to maintain coverage.

21. Payment of the tobacco surcharge was required for Plaintiff and all others similarly situated to remain insured under the Plan. Plaintiff and all others similarly situated have in fact paid the surcharge.

22. Bass Pro is and has been required to make contributions to the Plan to ensure that it remains adequately funded. By collecting the tobacco surcharge, Bass Pro has reduced the amount of its own contributions, thereby increasing its profits.

23. At all times relevant to this lawsuit, Bass Pro has maintained sole control of the tobacco surcharge program, including by determining which participants are required to pay the surcharge, withholding participants' funds from their paychecks to pay the surcharge, and determining which employees (if any) are reimbursed for their payment of the tobacco surcharge.

### b. Bass Pro Cannot Avail Itself to ERISA's Safe Harbor for Wellness Programs.

24. As an exception to its anti-discrimination rule, ERISA carves out protection for "programs of health promotion and disease prevention", also known as "wellness programs." 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(b)(2)(B).

25. But to qualify as a lawful wellness program, a plan must fully comply with a set of statutory and regulatory requirements. Those requirements concern (1) the frequency of the opportunity for a participant to qualify for the reward; (2) the size of the reward; (3) reasonable design of the program; (4) uniform availability and reasonable alternative standards; and (5) notice of the availability of a reasonable alternative standard. 29 C.F.R. § 2590.702(f). These regulations "set forth criteria for an *affirmative defense* that can be used by plans and issuers in response to a claim that the plan or issuer discriminated under the [] nondiscrimination provisions." *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158 at 33160 (June 3, 2013) (emphasis added). Every one of the requirements "must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*

26. Bass Pro's tobacco surcharge program did not and does not satisfy the requirements that it provide a reasonable alternative standard, nor does it provide notice of a reasonable alternative standard. As a result, it cannot meet each element of its affirmative defense.

27. Consequently, Bass Pro is not entitled to safe harbor protection for operating a compliant wellness program and its assessment of its tobacco surcharge constitutes unlawful discrimination based on a health status-related factor.

### c. Bass Pro's Tobacco Surcharge Program Did Not Provide for a Reasonable Alternative Standard

28. *First,* by law, a tobacco surcharge is an example of an "outcome-based" and "health contingent" wellness program. 78 Fed. Reg. 33158 at 33161 ("An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking . . .) in order to obtain a reward."); *see*

*also id*. at 33159 ("Examples of health-contingent wellness programs in the proposed regulations included a program that imposes a premium surcharge based on tobacco use")

29. To be lawful, such a program must provide for "[u]niform availability and reasonable alternative standards." 29 C.F.R. § 2590.702(f)(4)(iv). "[A] reasonable alternative standard must be provided to all individuals who do not meet the initial standard, to ensure that the program is reasonably designed to improve health and is not a subterfuge for underwriting or reducing benefits based on health status." 78 Fed. Reg. 33158 at 33160.

30. A common means by which plan administrators attempt to provide a reasonable alternative standard to a tobacco surcharge is to permit participants to avoid the surcharge by completing a tobacco cessation program.

31. But as the Department of Labor's regulations make clear, a putative alternative that requires the participant to actually quit smoking in order to receive the reward is necessarily not a "reasonable alternative standard." One example offered by the Department states that:

> Example 7—Tobacco use surcharge with alternative program requiring actual cessation. (i) Facts. Same facts as Example 6, except the plan does not provide participant F with the reward in subsequent years **unless F actually stops smoking after participating in the tobacco cessation program**.
>
> (ii) Conclusion. In this Example 7, **the program is not reasonably designed under paragraph (f)(4)(iii) of this section and does not provide a reasonable alternative standard as required under paragraph (f)(4)(iv) of this section**. The plan cannot cease to provide a reasonable alternative standard merely because the participant did not stop smoking after participating in a smoking cessation program.

29 C.F.R. § 2590.702, Example 7 (emphasis added).

32. Yet actual cessation is precisely what Bass Pro requires. Defendants' Plan materials plainly state that employees and their dependents can remove the surcharge only if they quit smoking for ninety days and remain tobacco-free. Bass Pro's open enrollment benefits guide for plan year 2024 includes the following statements:

- **Tobacco use** — If you or anyone you cover on your Medical plan uses any form of tobacco or vaping products, add $40 per week. You must answer "yes" on the tobacco use question in Workday. You may remove the tobacco use premium differential if all covered members have quit for 90 days and remain tobacco free.

11

## INCREASE IN TOBACCO PREMIUM DIFFERENTIAL

It is well documented that tobacco use contributes to a number of long-term chronic conditions and increasingly costly treatments. We will increase the tobacco use premium differential from $30 to $40 per week beginning January 1, 2024. At the same time, we offer resources to help you quit. Tobacco users who kick the habit for 90 days and remain tobacco free may have the premium differential removed. [See page 11 for more details.]

### Time to quit tobacco?

Resources are available from Vida Health to help you quit at no cost to you. The tobacco use premium differential can be removed if you and any dependents you cover on your Medical plan quit for 90 days and remain tobacco free.

Contact Vida Health at **vida.com/basspro**.

33. Because Bass Pro did not provide Plan participants with an alternative program by which they could avoid payment of the surcharge, it has failed to meet the requirements for a

8

"reasonable alternative standard", and consequently cannot avail itself of the safe harbor for wellness programs set out by ERISA.

34. *Second*, for a putative alternative standard (such as attending a tobacco cessation program) to be deemed "reasonable" under the law, "[t]he full reward under the outcome-based wellness program must be available to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv). Thus, a participant who meets the alternative standard must be eligible to avoid the surcharge in its entirety for a given plan year.

35. The applicable regulatory guidelines state that "while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, *the plan or issuer must provide the premium discounts for January, February, and March to that individual*.) Plans and issuers have flexibility to determine how to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) as long as the method is reasonable and the *individual receives the full amount of the reward*." 78 Fed. Reg. 33158 at 33163 (emphasis added).

36. But, upon information and belief, a Bass Pro employee who completed the alternative standard (unlawful as it may be) during a given plan year would not be eligible to avoid the entire $2,080 (or formerly $1,560) tobacco surcharge. Instead, he or she could avoid the surcharge on a going-forward basis only and would not be eligible to receive a reimbursement for surcharge payments already made in that plan year.

37. Because a Plan participant could not receive a retroactive reimbursement to avoid the tobacco surcharge in its entirety, Bass Pro does not permit participants to receive the "full reward" and therefore does not provide for a "reasonable alternative standard."

### b. Bass Pro Failed to Provide Notice of Availability of a Reasonable Alternative Standard

38. *Third*, to be deemed a lawful wellness program, "[t]he plan or issuer must disclose *in all plan materials describing the terms of an outcome-based wellness program* . . . the availability of a reasonable alternative standard to qualify for the reward." 29 C.F.R. § 2590.702 (emphasis added); 42 U.S.C. § 300gg-4(j)(3)(E). "[A] plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure." 78 Fed. Reg. 33158-01 at 33166.

39. But Plan materials discussing the tobacco surcharge do not disclose the existence of a reasonable alternative standard by which it can be avoided. Though some of the materials note that a participant may enroll in a tobacco cessation program, they do not disclose that such a program is an alternative standard by which a participant may qualify for the award (that is, avoid the surcharge).

40. For instance, as alleged *infra*, the 2024 plan year open enrollment guide fails to provide legally adequate notice in that it (1) fails to disclose the existence of a reasonable alternative standard by which a participant may avoid the surcharge; and (2) fails to disclose that a participant who completed the cessation program would be eligible for retroactive reimbursement for surcharge payments made during that plan year.

41. Other Plan materials are to the same effect. For instance, the employee portal on Bass Pro's website contains the following statement, which references the tobacco surcharge without the availability of a reasonable alternative standard to qualify for the reward.

> **Adopt healthy habits with Rally®**
>
> **Quit tobacco**
>
> If you or a family member enrolled in the Bass Pro medical plan is a tobacco user that's ready to quit, take advantage of Quit For Life®, a smoking cessation program available at no cost to you, as part of your benefits. Join now for personalized support and tools to help you quit tobacco for good, including:
>
> - Nicotine patches or gum to help curb your nicotine cravings.
> - One-on-one coaching from trained experts who understand what you're going through.
> - Print and online tools to help you live tobacco-free.
>
> Complete the program and stay tobacco-free for 90 days and you can stop paying the tobacco surcharge, too. Enroll by calling **1-866-QUIT-4-LIFE (1-866-784-8454)**.
>
> Learn more at quitnow.net.

42. *Fourth*, under the applicable regulations, "[t]he plan or issuer must disclose in all plan materials describing the terms of an activity-only wellness program . . . contact information for obtaining a reasonable alternative standard and a *statement that recommendations of an individual's personal physician will be accommodated*. 29 C.F.R. § 2590.702(f)(4)(v).

43. The foregoing Plan materials cited *infra* do not include a statement that the recommendations of an individual's physician will be accommodated. Upon information and belief, none of Bass Pro's other written Plan materials referencing the tobacco surcharge include this disclosure either.

44. Bass Pro, then, has not complied with the requirement that it provide notice of the availability of a reasonable alternative standard by which a Plan participant could avoid the tobacco surcharge and receive the full reward, or that the recommendations of his or her personal physician would be accommodated. The company cannot then avail itself of the regulatory safe harbor for operating a lawful wellness program.

## CLASS ACTION ALLEGATIONS

45. <u>Class Definition</u>: Plaintiff brings this action individually and on behalf of all other similarly situated individuals. Pursuant to Federal Rules of Civil Procedure 23(b)(3), 23(b)(1)(B), 23(b)(2), and/or 23(c)(4), Plaintiff seeks certification of a class consisting of:

> All Plan participants within the United States who paid Bass Pro's tobacco surcharge at any time from six years prior to the filing of the Complaint to the present.

46. Excluded from the Class are the Court and its officers, employees, and relatives; Bass Pro and its subsidiaries, officers, and directors; and governmental entities.

47. <u>Numerosity</u>: the Class consists of members so numerous and geographically dispersed that joinder of all members is impracticable, as Bass Pro employs thousands of similarly situated individuals across the United States.

48. All members of the Class are ascertainable by reference to objective criteria, as Bass Pro has access to addresses and other contact information for Class members that can be used for notice purposes.

49. Common Questions of Law and Fact Predominate: There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual members of the Class. Indeed, the claims of *every* class member will rise or fall on the question of whether the tobacco surcharge is compliant with all legal requirements, and therefore lawful. Common questions include:

   a. Whether Bass Pro's tobacco surcharge discriminates against Plan participants and beneficiaries based on a health status-related factor;

   b. Whether Bass Pro's tobacco surcharge program qualifies for statutory safe harbor protection as a compliant wellness program;

   c. Whether Bass Pro can meet every element of its statutory affirmative defense for operating a compliant wellness program;

   d. Whether Bass Pro offered a reasonable alternative standard when it required tobacco users to actually quit smoking and remain tobacco-free for ninety days to remove the surcharge;

e. Whether Bass Pro would allow a participant to be retroactively reimbursed for surcharge payments previously made in a given plan year;

f. Whether all of Bass Pro's Plan materials describing the tobacco surcharge give notice of a reasonable alternative standard by which a plan participant may receive the full reward;

g. Whether a plan document that describes the tobacco surcharge and notes the existence of a smoking cessation program, but does not disclose that enrollment in a smoking cessation program will allow a plan participant to avoid the surcharge gives adequate notice of a reasonable alternative standard;

h. Whether a plan document that describes the tobacco surcharge but does not disclose an alternative program by which a participant can earn the full reward for the plan year gives notice of a reasonable alternative standard;

i. Whether a plan document that describes the tobacco surcharge but does not disclose a statement that recommendations of an individual's personal physician will be accommodated gives notice of a reasonable alternative standard

j. Whether Bass Pro's tobacco surcharge violates the law; and

k. Whether Bass Pro breached its fiduciary duties with respect to its collection and retention of the tobacco surcharge.

50. <u>Typicality</u>: Plaintiff's claims are typical of other members of the Class because all the claims arise from the same course of conduct by Bass Pro—its collection of an unlawful surcharge—and are based on the same legal theories.

51. <u>Adequacy of Representation</u>: Plaintiff is an adequate class representative because her interests do not conflict with the interests of the Class members whom she seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of Class members and have the financial resources to do so. The Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

52. <u>Superiority of Class Action</u>: Class treatment is superior to individual treatment, as it will permit a large number of similarly situated persons to prosecute their respective class claims in a single forum, simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

53. To the extent not all issues or claims, including the amount of damages, can be resolved on a class-wide basis, Plaintiff invokes Federal Rule of Civil Procedure 23(c)(4), reserving the right to seek certification of a class action with respect to particular issues, and Federal Rule of Civil Procedure 23(c)(5), reserving the right to divide the class into subclasses.

## COUNT I – ERISA STATUTORY VIOLATION
**Unlawful Surcharge – Failure to Provide a Reasonable Alternative Standard**
*By Plaintiff and the Class*

54. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

55. To enroll in the Plan, Plaintiff and class members were required to pay a tobacco surcharge in the amount of $40 per week, or $2,080 per year beginning in plan year 2024, and $30 per week, or $1,560 in prior plan years.

56. Bass Pro's tobacco surcharge is not and was not a permissible wellness program, because it did not provide for a reasonable alternative standard, in that:

> a. A tobacco user could not avoid the surcharge by simply completing a designated smoking cessation program; rather, he or she was required to actually quit smoking for a period of ninety days, and to remain tobacco-free, before the surcharge would be removed; and
>
> b. A tobacco user who stopped smoking for a period of ninety days would be eligible to have the surcharge removed going forward but would not be reimbursed for surcharge payments already made during that plan year, and thus would not be eligible to receive the "full reward" of the tobacco surcharge

program, that being a $1,560 or $2,080 reduction in premium costs to maintain medical coverage.

57. Bass Pro cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

58. Bass Pro's tobacco surcharge has discriminated against, and continues to discriminate against, Plan participants based on a health status-related factor is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

59. 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

60. Plaintiff and class members were required to pay an illegal fee, and Bass Pro collected that fee from them in violation of the law. Equity requires that those funds be returned.

**COUNT II – ERISA STATUTORY VIOLATION**
**Unlawful Surcharge – Failure to Provide Required Notice**
*By Plaintiff and the Class*

61. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

62. To enroll in the Plan, Plaintiff and class members were required to pay a tobacco surcharge in the amount of $40 per week, or $2,080 per year beginning in plan year 2024, and $30 per week, or $1,560 in prior plan years.

63. Bass Pro's tobacco surcharge is not and was not a permissible wellness program, because Bass Pro did not give statutorily required notice of reasonable alternative standard, in that:

    a. The Plan's written materials discussed the tobacco surcharge, but did not disclose the availability of an alternative standard—such as a smoking cessation program—by which the surcharge could be avoided, and instead stated that the surcharge could be avoided only by actually quitting smoking for a period of ninety days and remaining tobacco-free;

15
Case 6:24-cv-03122-MDH   Document 1   Filed 04/26/24   Page 15 of 20

b. The Plan's written materials discussed the tobacco surcharge, but did not notify participants and beneficiaries that they would be eligible to receive the full reward of the tobacco surcharge program for the plan year, including the retroactive reimbursement of any surcharge fees already paid that plan year; and

c. The Plan's written materials discussed the tobacco surcharge but did not include a statement that recommendations of an individual's personal physician will be accommodated in conjunction with the formation of a reasonable alternative standard.

64. Bass Pro cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

65. Bass Pro's tobacco surcharge has discriminated against, and continues to discriminate against, plan participants based on a health status-related factor is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

66. 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

67. Plaintiff and class members were required to pay an illegal fee, and Bass Pro collected that fee from them in violation of the law. Equity requires that those funds be returned.

**COUNT III – ERISA BREACH OF FIDUCIARY DUTY**
**29 U.S.C. § 1109**
*By Plaintiff and the Class, On Behalf of the Plan*

68. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

69. At all times relevant to this lawsuit, Bass Pro was the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting

management of the medical benefits plans and disposition of their assets by holding in trust the funds collected from the tobacco surcharge, and had discretionary authority and discretionary responsibility in the administration of the medical plan.

70. Bass Pro breached its fiduciary duty by assessing and collecting the tobacco surcharge in violation of the law and in violation of the terms of the Plan, as the receipt of additional funds reduced its own costs associated with funding the plan and forestalled its own obligations to make contributions thereto.

71. Upon information and belief, Bass Pro's responsibility with respect to the funding of the Plan's claims and administrative expenses relating to the Plan's self-funded arrangements equaled the amount by which the Plan's claims and administrative expenses exceeded all participant contributions, including the tobacco surcharge funds, Bass Pro's collection of the tobacco surcharge diminished the amount it had to contribute to the plan, thereby benefiting itself and harming the Plan.

72. As a result of the imposition of the tobacco surcharge, Bass Pro enriched itself at the expense of the Plan, thereby resulting in it receiving a windfall.

73. Bass Pro breached its fiduciary duties under ERISA in that it:

  a. failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A);

  b. failed to discharge its duties in accordance with the documents and instruments governing the Plan insofar as the documents and instruments are consistent with ERISA, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(D);

  c. caused the Plan to engage in transactions that Bass Pro knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the health plan, in violation of ERISA. *See* 29 U.S.C. § 1106(a)(1)(D);

- d. dealt with assets of the Plan in Bass Pro's own interests in violation of ERISA. *See* 29 U.S.C. § 1106(b)(1);

- e. acted on behalf of a party whose interests were averse to the interests of the Plan or the interests of its participants and beneficiaries, in violation of ERISA. *See* 29 U.S.C. § 1106(b)(2); and

- f. caused the Plan to require participants to pay a premium or contribution which was greater than such premium or contribution for a similarly situated participant enrolled in the health plan on the basis of a health status-related factor in relation to the participant or to an individual enrolled under the health plan as a dependent of the individual, in violation of ERISA. *See* 29 U.S.C. § 1182(b).

74. As a result of these breaches, and pursuant to 29 U.S.C. § 1109, Bass Pro is liable to make good to the plan all losses to the Plan resulting from its breaches, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan and/or a constructive trust all profits it acquired through its violations alleged herein and which it made through use of assets of the plan, and for such other equitable or remedial relief as is proper.

75. Plaintiff is authorized to bring this action on behalf of the plan pursuant to 29 U.S.C. § 1132(a)(2).

## **REQUEST FOR RELIEF**

Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in her favor and against Bass Pro as follows:

- A. That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative, and appoint Plaintiff's counsel as Class Counsel;

- B. That the Court order Bass Pro to reimburse all persons who paid the tobacco surcharge within the relevant limitations period;

C. That the Court order disgorgement and/or restitution of all payments unlawfully assessed by Bass Pro, or, alternatively, the profits earned by Bass Pro in connection with its receipt of such unlawful fees;

D. That the Court grant a declaratory judgment holding that the acts of Bass Pro described herein violate ERISA and applicable law, as well as the terms of the plan;

E. That the Court enter a permanent injunction against Bass Pro prohibiting it from collecting a tobacco surcharge unless and until the company revises the surcharge to comply with all ERISA statutory requirements;

F. That the Court order Bass Pro to provide all accountings necessary to determine the amounts it must make good to the plan and to plan participants and beneficiaries;

G. That the Court surcharge against Bass Pro all funds it collected in violation of ERISA and the terms of the plan;

H. That the Court find and adjudge that Bass Pro is liable to make good to the Plan all losses to the Plan resulting from each breach of fiduciary duties, to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty, and grant all other proper relief authorized by 29 U.S.C. § 1109, including removal and replacement of the fiduciary;

I. That the Court impose a constructive trust on profits received by Bass Pro as a result of fiduciary breaches committed by it or for which it is liable, upon which Plaintiff and the class can make claims for equitably vested benefits;

J. That the Court award Plaintiff and the class all damages available at law in an amount to be determined at trial;

K. That the Court award reasonable attorneys' fees, costs, and expenses as provided by law;

L. That the Court order the payment of interest to the extent it is allowed by law; and

M. That the Court grant all other equitable, remedial, and legal relief as it deems just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury of all issues so triable.

Dated: April 26, 2024

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

*/s/ Alexander T. Ricke*
George A. Hanson, MO. Bar No. 43450
Alexander T. Ricke, MO. Bar No. 65132
Caleb J. Wagner, MO Bar No. 68458
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:    (816) 714-7100
Facsimile:    (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com
wagner@stuevesiegel.com

**McCLELLAND LAW FIRM, P.C.**
Ryan L. McClelland, MO Bar No. 59343
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068-1170
Telephone:    (816) 781-0002
Facsimile:    (816) 781-1984
ryan@mcclellandlawfirm.com

*Attorneys for Plaintiff
and the Proposed Class*