# EXHIBIT A

| | |
|---|---|
| NORA RUIZ, individually and on behalf of all others similarly situated, ) ) ) ) Plaintiff, ) v. ) BASS PRO GROUP LLC, and BPS ) DIRECT LLC, d/b/a BASS PRO SHOPS, ) ) Defendants. ) | Case No. 6:24-CV-03122-MDH |

**AMENDED ANSWER TO PLAINTIFF'S CLASS ACTION COMPLAINT**

Defendants Bass Pro Group, LLC n/k/a Great Outdoors Group, LLC and BPS Direct, LLC[1] ("Defendants"), by and through their attorneys, submit their Amended Answer to Plaintiff's Class Action Complaint (Doc. 1) ("Complaint") as follows:

**NATURE OF THE ACTION**

1. Bass Pro is an outdoor and sporting goods retailer operating throughout the United States and having more than 40,000 employees. It operates its stores, restaurants, and resorts and conducts business under various trade names, including but not limited to Bass Pro Shops, Cabela's, White River Marine Group, Tracker Marine Group, Tracker Marine Boating Center, Fishing Holdings, and Big Cedar Lodge.

**ANSWER: Defendants admit that Bass Pro Group, LLC n/k/a Great Outdoors Group, LLC ("Bass Pro") is a retailer operating in the United States under various trade**

---

[1] BPS Direct, LLC has no involvement in the dispute giving rise to this litigation and is improperly named as a Defendant.

1

**names with approximately 40,000 employees. Defendants deny the remaining allegations in Paragraph 1.**

2. Upon information and belief, all regular employees and eligible dependents can receive health insurance coverage by participating in a medical plan sponsored and administered by Bass Pro. These medical plans operate under the plan name Bass Pro Group LLC Health and Welfare Benefit Plans (hereafter "the Plan").

**ANSWER: Defendants admit that certain employees and their dependents are eligible to participate in the Bass Pro Group, LLC Welfare Benefits Plan ("the Plan"), which is an employee welfare benefits plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq*. Defendants further admit that the Plan, which is set forth in writing and is the best evidence of its contents, provides certain group health and medical benefits to eligible participants.**

3. For those employees and their dependents to participate in the Plan, they must declare whether they are a tobacco user. Those who do use tobacco products are required to pay an additional fee of $40 per week—or $2,080 per year—to maintain coverage.

**ANSWER: Defendants admit that the Plan is set forth in writing and provides the best evidence of its contents. Defendants deny any allegations contained in Paragraph 3 inconsistent with the written documents. Defendants further admit that the Plan includes a "tobacco surcharge" for participants using tobacco or vaping products. Defendants also admit that, prior to 2024, the tobacco surcharge was $30 per week and beginning in 2024, the tobacco surcharge was increased to $40 per week. Defendants deny any remaining allegations in Paragraph 3.**

4. Fees of this sort, frequently referred to as "tobacco surcharges", have proliferated in recent years. But to be legal, they must strictly comply with the terms of the Employee Retirement

2

Income Security Act (ERISA), applied to medical plans by the Patient Protection and Affordable Care Act, and implementing regulations. Bass Pro did not do so, and therefore collected the tobacco surcharge in violation of the law and in violation of its duties to plan participants and the Plan.

**ANSWER: Defendants are without sufficient knowledge or information to admit or deny whether tobacco surcharges "have proliferated in recent years" and therefore deny the allegation. Defendants also deny that they violated the law or any duties to the Plan or Plan participants. The remaining allegations in Paragraph 4 are legal arguments and conclusions to which no response is required. To the extent a response is necessary, Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret ERISA or the Patient Protection and Affordable Care Act.**

5. More specifically, ERISA's anti-discrimination provisions prohibit any medical plan from charging an extra premium or fee based on any health status related factor, including tobacco use, unless that fee is part of a bona fide "wellness program." And to qualify as a compliant wellness program, a company must offer a "reasonable alternative standard," usually in the form of a smoking/tobacco cessation program, completion of which allows participants to avoid the surcharge.

**ANSWER: The allegations in Paragraph 5 are legal conclusions to which no response is required. To the extent a response is necessary, Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret ERISA or its regulations.**

6. Although Bass Pro encouraged its tobacco-using employees to complete a tobacco cessation program called Quit for Life, the completion of that program did not result in the surcharge being removed. Instead, a tobacco user could only avoid the surcharge if the participant ceased using tobacco products and then stayed tobacco-free for 90 days. As such, the company simply did not provide any alternative standard to its participants; instead, it required participants

3

to meet the original standard—not being a tobacco user. Bass Pro's decision to charge a discriminatory fee without offering any form of a reasonable alternative standard is a plain violation of ERISA.

**ANSWER: Defendants admit that Plan participants were encouraged to quit using tobacco and vaping products and that Bass Pro offered a free smoking cessation program to Plan participants, the terms of which varied by year. Defendants further admit that the Plan is set forth in writing and provides the best evidence of its contents. Defendants deny any allegations contained in Paragraph 6 inconsistent with the written documents. Defendants deny the remaining allegations in Paragraph 6, including all allegations of discriminatory or unlawful conduct.**

7. Additionally, even if offering a tobacco cessation program that required the tobacco user to be tobacco free could constitute a reasonable alternative standard (it cannot), a compliant wellness program's reasonable alternative standard must allow participants to receive the program's "full reward"; that is, avoid the surcharge for the entire plan year upon completion of the alternative standard, and must provide notice that such an alternative program exists in every communication regarding the surcharge. This notice must also include a statement that recommendations of an individual's personal physician in formulating a reasonable alternative standard will be accommodated.

**ANSWER: The allegations in Paragraph 7 are legal conclusions and arguments to which no response is required. To the extent a response is necessary, Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law.**

8. But a Bass Pro plan participant who ceased tobacco use would only be eligible to avoid the surcharge on a going-forward basis, and thus could not earn the "full reward"—*i.e.*, avoiding the surcharge for the entire plan year. Further, Bass Pro's plan materials used for

4

communicating information about the surcharge with participants make no mention of an opportunity to earn the full reward for the entire plan year by completing a reasonable alternative standard. And those materials do not include a disclosure that the recommendations of an individual's personal physician would be accommodated. Thus, the surcharge violates ERISA's anti-discrimination requirements, and its collection by Bass Pro was and remains unlawful.

**ANSWER: Defendants admit that the Plan and any enrollment materials are set forth in writing and provide the best evidence of their contents. Defendants deny any allegations contained in Paragraph 8 that are incomplete or inconsistent with the written documents. Defendants deny the remaining allegations in Paragraph 8, including all allegations of discriminatory or unlawful conduct.**

9. Nora Ruiz is a regular, full-time Bass Pro employee working as an outfitter support specialist who was required to pay the illegal tobacco surcharge to maintain health insurance coverage. She brings this lawsuit on behalf of herself and all similarly situated plan participants and beneficiaries, seeking to have these unlawful fees returned, and for plan-wide relief under 29 U.S.C. § 1109.

**ANSWER: Defendants admit that Plaintiff has been employed full-time by Bass Pro n/k/a Great Outdoors Group, LLC since October 13, 2021 as a Customer Care Outfitter. Defendants further admit that, on or about October 8, 2021, Plaintiff acknowledged and accepted the terms of a Mutual Agreement Regarding Arbitration and Class Action Claims ("Arbitration Agreement/Class Waiver"). Defendants admit that Plaintiff purports to bring this lawsuit individually and on behalf of a class but deny she is able to pursue her claims and/or the class claims under the Arbitration Agreement/Class Waiver, which precludes her participation in any multi-plaintiff, class, collective, and/or representative actions and which requires her to arbitrate her claims in individual arbitration. Defendants also admit that**

5

**Plaintiff began participating in the Plan effective January 1, 2023, at which point she started paying the tobacco surcharge. Defendants deny any liability to Plaintiff, deny that the tobacco surcharge was illegal or unlawful, deny that this case is appropriate for class certification, deny that Plaintiff is a proper class representative or class member, and deny all remaining allegations in Paragraph 9.**

<u>**PARTIES, JURISDICTION, AND VENUE**</u>

10. Plaintiff Nora Ruiz is a citizen of the state of Missouri. At all times relevant to this suit, she has been employed by Bass Pro within the State of Missouri and has paid the Plan's premiums and tobacco surcharge within the State of Missouri.

**<u>ANSWER</u>: Upon information and belief, Defendants admit that Plaintiff is a Missouri resident. Defendants admit that Plaintiff is employed by Bass Pro in Missouri and began paying a tobacco surcharge effective January 1, 2023. Defendants deny any remaining allegations in Paragraph 10.**

11. Defendant Bass Pro Group LLC is a limited liability company conducting business under the name Bass Pro Shops. It is organized under the laws of the State of Delaware and has its principal place of business in Springfield, Greene County, Missouri.

**<u>ANSWER</u>: Defendants admit the allegations of Paragraph 11.**

12. Defendant BPS Direct LLC is a limited liability company conducting business under the name Bass Pro Shops. It is organized under the laws of the State of Delaware and has its principal place of business in Springfield, Greene County, Missouri.

**<u>ANSWER</u>: Defendants admit that BPS Direct LLC is a limited liability company. Defendants deny that BPS Direct, LLC was involved in the alleged events giving rise to this litigation and state that it is improperly named as a Defendant. Defendants deny the remaining allegations of Paragraph 12.**

6

13.     At all times relevant to this lawsuit, Defendants operated the Bass Pro Group LLC Health and Welfare Benefit Plans (hereafter "the Plan"), which were available for Bass Pro employees and their dependents. The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

**ANSWER:  Defendants admit that Bass Pro Group, LLC n/k/a Great Outdoors Group, LLC maintains the Plan, which is an employee welfare benefit plan subject to ERISA, for eligible employees and their dependents. Defendants also admit that the Plan, which is set forth in writing and is the best evidence of its contents, provides certain health and medical benefits to eligible participants. Defendants deny any remaining allegations in Paragraph 13.**

14.     Plaintiff is a participant in the Plan pursuant to 29 U.S.C. § 1102(7).

**ANSWER:  Defendants admit that Plaintiff began participating in the Plan effective January 1, 2023. Defendants deny any remaining allegations of Paragraph 14.**

15.     This Court possesses subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. This Court also possesses subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: (1) there are at least 100 class members; (2) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (3) Defendants and at least one class member are citizens of different states, and/or are a citizen or subject of a foreign state, and at least one class member is a citizen of a state.

**ANSWER:  The allegations in Paragraph 15 contain legal conclusions to which no response is required. To the extent a response is necessary, Defendants admit that Plaintiff purports to bring this action under ERISA and the Class Action Fairness Act.  ~~Defendants admit that this Court has subject matter jurisdiction over this dispute but deny~~ Defendants deny that this Court has subject matter jurisdiction over Plaintiff's claims due to the**

7

**Arbitration Agreement. Defendants further admit that the Arbitration Agreement/Class Waiver bars Plaintiff's claims under the Class Action Fairness Act and/or her participation in any multi-plaintiff, class, collective, and/or representative actions. Defendants deny that Plaintiff is entitled to any damages or other relief and/or that this matter is appropriate for class certification. Defendants deny any remaining allegations in Paragraph 15.**

16. This Court possesses personal jurisdiction over Defendants in this case because their principal place of business is in Missouri and are thus "at home" within the state. Additionally, the claims of Plaintiff and all others similarly situated arise from the acts and omissions of Defendants with respect to their activities and conduct concerning Plaintiff within the state of Missouri, and Defendants have purposefully availed themselves of the privilege of conducting business within the state of Missouri. Further, ERISA authorizes nationwide service of process. 29 U.S.C. § 1132(e)(2).

**ANSWER: The allegations in Paragraph 16 contain legal conclusions to which no response is required. To the extent a response is necessary, Defendants do not dispute personal jurisdiction except to allege that this matter is inappropriate for court adjudication and/or class adjudication by reason of the Arbitration Agreement/Class Waiver. Defendants deny any remaining allegations in Paragraph 16.**

17. Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because this is the District where Defendants administer and sponsor the Plan and where Defendants' unlawful acts occurred.

**ANSWER: The allegations in Paragraph 17 contain legal conclusions to which no response is required. To the extent a response is necessary, Defendants do not dispute venue for purposes of a court action but deny that a court action is appropriate by virtue of the**

**Arbitration Agreement/Class Waiver. Defendants expressly deny committing any unlawful acts, as well as all remaining allegations in Paragraph 17.**

**FACTUAL ALLEGATIONS**

18.     As a baseline rule, and to broaden access to affordable health insurance coverage, the Patient Protection and Affordable Care Act amended ERISA to prohibit any health insurer or medical plan from discriminating against any participant in providing coverage or charging premiums based on a "health status-related factor", including the use of tobacco. Pursuant to this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

**ANSWER:  The allegations in Paragraph 18 are legal conclusions and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law.**

19.     On its face, Bass Pro's tobacco surcharge violates this provision. Plaintiff and all others similarly situated were, for plan years 2023 and earlier required to pay an additional "premium or contribution" of $30 per week, or $1,560 per year, based on a "health status-related factor", that being their use of tobacco products. For plan year 2024, that additional charge was raised to $40 per week, or $2,080 per year.

**ANSWER:  Defendants admit that Plaintiff first paid a tobacco surcharge effective January 1, 2023. Defendants further admit that the tobacco surcharge for 2023 was $30 per week and, beginning on January 1, 2024, the tobacco surcharge was increased to $40 per week. Defendants deny that the tobacco surcharge was illegal or unlawful. The remaining**

9

**allegations in Paragraph 19 contain legal conclusions, arguments, and interpretations to which no response is necessary. To the extent a response is required, Defendants deny the remaining allegations in Paragraph 19.**

20. Specifically, at all times relevant to this lawsuit, pursuant to Bass Pro's enrollment rules for the Plan, any employee or covered dependent who used use any form of tobacco or vaping products were required to declare themselves to be tobacco users as part of the enrollment process and were subsequently required to pay the tobacco surcharge to maintain coverage.

**ANSWER: Defendants admit that the Plan and any enrollment materials are set forth in writing and provide the best evidence of their contents. Defendants deny any allegations contained in Paragraph 20 that are incomplete or inconsistent with the written documents. Answering further, Defendants admit that, as part of the enrollment process, participants and their dependents were required to disclose whether they used tobacco products. Defendants further admit that the tobacco surcharge was applied to participants who declared that they or their eligible dependents used tobacco. Defendants deny any remaining allegations in Paragraph 20.**

21. Payment of the tobacco surcharge was required for Plaintiff and all others similarly situated to remain insured under the Plan. Plaintiff and all others similarly situated have in fact paid the surcharge.

**ANSWER: Defendants admit that the Plan and any enrollment materials are set forth in writing and provide the best evidence of their contents. Defendants deny any allegations contained in Paragraph 21 that are incomplete or inconsistent with the written documents. Answering further, Defendants admit that, for the 2023 and 2024 Plan years, Plaintiff disclosed that she used tobacco and paid the tobacco surcharge. Defendants deny the remaining allegations in Paragraph 21.**

22.     Bass Pro is and has been required to make contributions to the Plan to ensure that it remains adequately funded. By collecting the tobacco surcharge, Bass Pro has reduced the amount of its own contributions, thereby increasing its profits.

**ANSWER:  Defendants deny the allegations of Paragraph 22.**

23.     At all times relevant to this lawsuit, Bass Pro has maintained sole control of the tobacco surcharge program, including by determining which participants are required to pay the surcharge, withholding participants' funds from their paychecks to pay the surcharge, and determining which employees (if any) are reimbursed for their payment of the tobacco surcharge.

**ANSWER:  Defendants admit that, as plan sponsor, Bass Pro determined whether to incorporate a tobacco surcharge program, to which participants it would apply, that Bass Pro withholds participants' contributions from their paychecks, and determines who is to be reimbursed. Defendants deny the remaining allegations of Paragraph 23.**

24.     As an exception to its anti-discrimination rule, ERISA carves out protection for "programs of health promotion and disease prevention", also known as "wellness programs." 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(b)(2)(B).

**ANSWER:  The allegations in Paragraph 24 are legal conclusions and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law.**

25.     But to qualify as a lawful wellness program, a plan must fully comply with a set of statutory and regulatory requirements. Those requirements concern (1) the frequency of the opportunity for a participant to qualify for the reward; (2) the size of the reward; (3) reasonable design of the program; (4) uniform availability and reasonable alternative standards; and (5) notice of the availability of a reasonable alternative standard. 29 C.F.R. § 2590.702(f). These regulations "set forth criteria for an *affirmative defense* that can be used by plans and issuers in response to a

11

claim that the plan or issuer discriminated under the [] nondiscrimination provisions." *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158 at 33160 (June 3, 2013) (emphasis added). Every one of the requirements "must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*

**ANSWER: The allegations in Paragraph 25 are legal conclusions and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law.**

26. Bass Pro's tobacco surcharge program did not and does not satisfy the requirements that it provide a reasonable alternative standard, nor does it provide notice of a reasonable alternative standard. As a result, it cannot meet each element of its affirmative defense.

**ANSWER: The allegations in Paragraph 26 are legal conclusions, arguments, and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law.**

27. Consequently, Bass Pro is not entitled to safe harbor protection for operating a compliant wellness program and its assessment of its tobacco surcharge constitutes unlawful discrimination based on a health status-related factor.

**ANSWER: The allegations in Paragraph 27 are legal conclusions, arguments, and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law. Defendants further deny that the tobacco surcharge was discriminatory or unlawful.**

12

28.     *First,* by law, a tobacco surcharge is an example of an "outcome-based" and "health contingent" wellness program. 78 Fed. Reg. 33158 at 33161 ("An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking . . .) in order to obtain a reward."); *see also id*. at 33159 ("Examples of health-contingent wellness programs in the proposed regulations included a program that imposes a premium surcharge based on tobacco use")

**ANSWER:  The allegations in Paragraph 28 are legal conclusions, arguments, and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law.**

29.     To be lawful, such a program must provide for "[u]niform availability and reasonable alternative standards." 29 C.F.R. § 2590.702(f)(4)(iv). "[A] reasonable alternative standard must be provided to all individuals who do not meet the initial standard, to ensure that the program is reasonably designed to improve health and is not a subterfuge for underwriting or reducing benefits based on health status." 78 Fed. Reg. 33158 at 33160.

**ANSWER:  The allegations in Paragraph 29 are legal conclusions, arguments, and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law.**

30.     A common means by which plan administrators attempt to provide a reasonable alternative standard to a tobacco surcharge is to permit participants to avoid the surcharge by completing a tobacco cessation program.

**ANSWER:  The allegations in Paragraph 30 are legal conclusions, arguments, and interpretations to which no response is required. In addition, the term "common means" is**

13

**unclear. To the extent a response is necessary, Defendants deny the allegations to the extent**

**they misstate, mischaracterize, or misinterpret the applicable law.**

31.     But as the Department of Labor's regulations make clear, a putative alternative that requires the participant to actually quit smoking in order to receive the reward is necessarily not a "reasonable alternative standard." One example offered by the Department states that:

> Example 7—Tobacco use surcharge with alternative program requiring actual cessation. (i) Facts. Same facts as Example 6, except the plan does not provide participant F with the reward in subsequent years **unless F actually stops smoking after participating in the tobacco cessation program**.

> (ii) Conclusion. In this Example 7, **the program is not reasonably designed under paragraph (f)(4)(iii) of this section and does not provide a reasonable alternative standard as required under paragraph (f)(4)(iv) of this section**. The plan cannot cease to provide a reasonable alternative standard merely because the participant did not stop smoking after participating in a smoking cessation program.

29 C.F.R. § 2590.702, Example 7 (emphasis added).

**ANSWER:  The allegations in Paragraph 31 are legal conclusions, arguments, and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law.**

32.     Yet actual cessation is precisely what Bass Pro requires. Defendants' Plan materials plainly state that employees and their dependents can remove the surcharge only if they quit smoking for ninety days and remain tobacco-free. Bass Pro's open enrollment benefits guide for plan year 2024 includes the following statements:

> • **Tobacco use** — If you or anyone you cover on your Medical plan uses any form of tobacco or vaping products, add $40 per week. You must answer "yes" on the tobacco use question in Workday. You may remove the tobacco use premium differential if all covered members have quit for 90 days and remain tobacco free.
>
>                                                                    11

## INCREASE IN TOBACCO PREMIUM DIFFERENTIAL



It is well documented that tobacco use contributes to a number of long-term chronic conditions and increasingly costly treatments. We will increase the tobacco use premium differential from $30 to $40 per week beginning January 1, 2024. At the same time, we offer resources to help you quit. Tobacco users who kick the habit for 90 days and remain tobacco free may have the premium differential removed. [See page 11 for more details.]

### Time to quit tobacco?

Resources are available from Vida Health to help you quit at no cost to you. The tobacco use premium differential can be removed if you and any dependents you cover on your Medical plan quit for 90 days and remain tobacco free.

Contact Vida Health at **vida.com/basspro**.

**ANSWER:  Defendants admit that any enrollment materials provided to employees are set forth in writing and provide the best evidence of their contents. Defendants deny any allegations contained in Paragraph 32 that are incomplete or inconsistent with the written documents. Defendants deny the remaining allegations in Paragraph 32.**

33.     Because Bass Pro did not provide Plan participants with an alternative program by which they could avoid payment of the surcharge, it has failed to meet the requirements for a "reasonable alternative standard", and consequently cannot avail itself of the safe harbor for wellness programs set out by ERISA.

15

**ANSWER: The allegations in Paragraph 33 are legal conclusions, arguments, and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations to in Paragraph 33.**

34. *Second*, for a putative alternative standard (such as attending a tobacco cessation program) to be deemed "reasonable" under the law, "[t]he full reward under the outcome-based wellness program must be available to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv). Thus, a participant who meets the alternative standard must be eligible to avoid the surcharge in its entirety for a given plan year.

**ANSWER: The allegations in Paragraph 34 are legal conclusions, arguments, and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law.**

35. The applicable regulatory guidelines state that "while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, *the plan or issuer must provide the premium discounts for January, February, and March to that individual*.) Plans and issuers have flexibility to determine how to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) as long as the method is reasonable and the *individual receives the full amount of the reward*." 78 Fed. Reg. 33158 at 33163 (emphasis added).

**ANSWER:** **The allegations in Paragraph 35 are legal conclusions, arguments, and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law.**

36. But, upon information and belief, a Bass Pro employee who completed the alternative standard (unlawful as it may be) during a given plan year would not be eligible to avoid the entire $2,080 (or formerly $1,560) tobacco surcharge. Instead, he or she could avoid the surcharge on a going-forward basis only and would not be eligible to receive a reimbursement for surcharge payments already made in that plan year.

**ANSWER:** **Defendants deny the allegations in Paragraph 36.**

37. Because a Plan participant could not receive a retroactive reimbursement to avoid the tobacco surcharge in its entirety, Bass Pro does not permit participants to receive the "full reward" and therefore does not provide for a "reasonable alternative standard."

**ANSWER:** **Defendants deny the allegations in Paragraph 37.**

38. *Third*, to be deemed a lawful wellness program, "[t]he plan or issuer must disclose *in all plan materials describing the terms of an outcome-based wellness program* . . . the availability of a reasonable alternative standard to qualify for the reward." 29 C.F.R. § 2590.702 (emphasis added); 42 U.S.C. § 300gg-4(j)(3)(E). "[A] plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure." 78 Fed. Reg. 33158-01 at 33166.

**ANSWER:** **The allegations in Paragraph 38 are legal conclusions, arguments, and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law.**

17

39.     But Plan materials discussing the tobacco surcharge do not disclose the existence of a reasonable alternative standard by which it can be avoided. Though some of the materials note that a participant may enroll in a tobacco cessation program, they do not disclose that such a program is an alternative standard by which a participant may qualify for the award (that is, avoid the surcharge).

**ANSWER: Defendants admit that the Plan and any enrollment materials provided to employees are set forth in writing and provide the best evidence of their contents. Defendants deny any allegations contained in Paragraph 39 that are incomplete or inconsistent with the written documents. Defendants deny any remaining allegations in Paragraph 39.**

40.     For instance, as alleged *infra*, the 2024 plan year open enrollment guide fails to provide legally adequate notice in that it (1) fails to disclose the existence of a reasonable alternative standard by which a participant may avoid the surcharge; and (2) fails to disclose that a participant who completed the cessation program would be eligible for retroactive reimbursement for surcharge payments made during that plan year.

**ANSWER: Defendants admit that the enrollment materials provided to employees are set forth in writing and provide the best evidence of their contents. Defendants deny any allegations contained in Paragraph 40 that are incomplete or inconsistent with the written documents. Defendants deny the remaining allegations in Paragraph 40.**

41.     Other Plan materials are to the same effect. For instance, the employee portal on Bass Pro's website contains the following statement, which references the tobacco surcharge without the availability of a reasonable alternative standard to qualify for the reward.

18

**ANSWER:** **Defendants state that the terms "other Plan materials" and "same effect" are unclear, and therefore deny any allegations related to such terms. Answering further, Defendants admit that the Plan and contents of any Bass Pro websites are set forth in writing and provide the best evidence of their contents. Defendants deny any allegations contained in Paragraph 41 that are incomplete or inconsistent with the written documents. Defendants deny the remaining allegations in Paragraph 41.**

42. *Fourth*, under the applicable regulations, "[t]he plan or issuer must disclose in all plan materials describing the terms of an activity-only wellness program . . . contact information for obtaining a reasonable alternative standard and a *statement that recommendations of an individual's personal physician will be accommodated*. 29 C.F.R. § 2590.702(f)(4)(v).

**ANSWER:** **The allegations in Paragraph 42 are legal conclusions and interpretations to which no response is required. To the extent a response is necessary,**

**Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law.**

43.     The foregoing Plan materials cited *infra* do not include a statement that the recommendations of an individual's physician will be accommodated. Upon information and belief, none of Bass Pro's other written Plan materials referencing the tobacco surcharge include this disclosure either.

**ANSWER:  Defendants state that the term "foregoing Plan materials" is unclear, and therefore, deny any allegations related to such terms. Answering further, Defendants admit that the Plan is set forth in writing and provides the best evidence of its contents. Defendants deny any allegations contained in Paragraph 43 that are incomplete or inconsistent with the written documents. Defendants deny the remaining allegations in Paragraph 43.**

44.     Bass Pro, then, has not complied with the requirement that it provide notice of the availability of a reasonable alternative standard by which a Plan participant could avoid the tobacco surcharge and receive the full reward, or that the recommendations of his or her personal physician would be accommodated. The company cannot then avail itself of the regulatory safe harbor for operating a lawful wellness program.

**ANSWER:  Defendants deny the allegations in Paragraph 44.**

## CLASS ACTION ALLEGATIONS

45.     Class Definition: Plaintiff brings this action individually and on behalf of all other similarly situated individuals. Pursuant to Federal Rules of Civil Procedure 23(b)(3), 23(b)(1)(B), 23(b)(2), and/or 23(c)(4), Plaintiff seeks certification of a class consisting of:

20

All Plan participants within the United States who paid Bass Pro's tobacco surcharge at any time from six years prior to the filing of the Complaint to the present.

**ANSWER:  Defendants admit that Plaintiff seeks to have a class certified and to be appointed as the class representative, but they deny such relief is appropriate. Defendants specifically deny that Plaintiff is able to pursue this litigation and/or the class claims under the Arbitration Agreement/Class Waiver, which requires individual arbitration of her claims and precludes her participation in any multi-plaintiff, class, collective, and/or representative actions. The remaining allegations in Paragraph 45 are legal conclusions and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the remaining allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law.**

46.     Excluded from the Class are the Court and its officers, employees, and relatives; Bass Pro and its subsidiaries, officers, and directors; and governmental entities.

**ANSWER:  Defendants admit that Plaintiff seeks to have a class certified and to be appointed as the class representative, but they deny such relief is appropriate. Defendants specifically deny that Plaintiff is able to pursue this litigation and/or the class claims under the Arbitration Agreement/Class Waiver, which requires individual arbitration of her claims and precludes her participation in any multi-plaintiff, class, collective, and/or representative actions. The remaining allegations in Paragraph 46 are legal conclusions and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the remaining allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law.**

47.  Numerosity: the Class consists of members so numerous and geographically dispersed that joinder of all members is impracticable, as Bass Pro employs thousands of similarly situated individuals across the United States.

**ANSWER:  Defendants admit that Plaintiff seeks to have a class certified and to be appointed as the class representative, but they deny such relief is appropriate. Defendants specifically deny that Plaintiff is able to pursue this litigation and/or the class claims under the Arbitration Agreement/Class Waiver, which requires individual arbitration of her claims and precludes her participation in any multi-plaintiff, class, collective, and/or representative actions. Bass Pro further admits that some or all of the putative members of Plaintiff's proposed class also executed the Arbitration Agreement/Class Waiver and are thus excluded from participation in this litigation. Defendants deny the remaining allegations in Paragraph 47.**

48.  All members of the Class are ascertainable by reference to objective criteria, as Bass Pro has access to addresses and other contact information for Class members that can be used for notice purposes.

**ANSWER:  Defendants admit that Plaintiff seeks to have a class certified and to be appointed as the class representative, but they deny such relief is appropriate. Defendants specifically deny that Plaintiff is able to pursue this litigation and/or the class claims under the Arbitration Agreement/Class Waiver, which requires individual arbitration of her claims and precludes her participation in any multi-plaintiff, class, collective, and/or representative actions. Bass Pro further admits that some or all of the putative members of Plaintiff's proposed class also executed the Arbitration Agreement/Class Waiver and are**

**thus excluded from participation in this litigation. Defendants deny the remaining allegations in Paragraph 48.**

49. <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual members of the Class. Indeed, the claims of *every* class member will rise or fall on the question of whether the tobacco surcharge is compliant with all legal requirements, and therefore lawful. Common questions include:

a. Whether Bass Pro's tobacco surcharge discriminates against Plan participants and beneficiaries based on a health status-related factor;
b. Whether Bass Pro's tobacco surcharge program qualifies for statutory safe harbor protection as a compliant wellness program;
c. Whether Bass Pro can meet every element of its statutory affirmative defense for operating a compliant wellness program;
d. Whether Bass Pro offered a reasonable alternative standard when it required tobacco users to actually quit smoking and remain tobacco-free for ninety days to remove the surcharge;
e. Whether Bass Pro would allow a participant to be retroactively reimbursed for surcharge payments previously made in a given plan year;
f. Whether all of Bass Pro's Plan materials describing the tobacco surcharge give notice of a reasonable alternative standard by which a plan participant may receive the full reward;
g. Whether a plan document that describes the tobacco surcharge and notes the existence of a smoking cessation program, but does not disclose that enrollment in a smoking cessation program will allow a plan participant to avoid the surcharge gives adequate notice of a reasonable alternative standard;
h. Whether a plan document that describes the tobacco surcharge but does not disclose an alternative program by which a participant can earn the full reward for the plan year gives notice of a reasonable alternative standard;
i. Whether a plan document that describes the tobacco surcharge but does not disclose a statement that recommendations of an individual's personal physician will be accommodated gives notice of a reasonable alternative standard
j. Whether Bass Pro's tobacco surcharge violates the law; and
k. Whether Bass Pro breached its fiduciary duties with respect to its collection and retention of the tobacco surcharge.

23

**ANSWER:** **Defendants deny the allegations in Paragraph 49 and its subparts. In addition, Defendants specifically deny that Plaintiff is able to pursue this litigation and/or the class claims under the Arbitration Agreement/Class Waiver, which requires individual arbitration of her claims and precludes her participation in any multi-plaintiff, class, collective, and/or representative actions. Bass Pro further admits that some or all of the putative members of Plaintiff's proposed class also executed the Arbitration Agreement/Class Waiver and are thus excluded from participation in this litigation.**

50. <u>Typicality</u>: Plaintiff's claims are typical of other members of the Class because all the claims arise from the same course of conduct by Bass Pro—its collection of an unlawful surcharge—and are based on the same legal theories.

**ANSWER:** **Defendants deny the allegations in Paragraph 50. Answering further, Defendants specifically deny that Plaintiff is able to pursue this litigation and/or the class claims under the Arbitration Agreement/Class Waiver, which requires individual arbitration of her claims and precludes her participation in any multi-plaintiff, class, collective, and/or representative actions. Bass Pro further admits that some or all of the putative members of Plaintiff's proposed class also executed the Arbitration Agreement/Class Waiver and are thus excluded from participation in this litigation.**

51. <u>Adequacy of Representation</u>: Plaintiff is an adequate class representative because her interests do not conflict with the interests of the Class members whom she seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of Class members and have the financial resources to do so. The Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

**ANSWER: Defendants admit that Plaintiff seeks to have a class certified and to be appointed as the class representative, but they deny such relief is appropriate. Defendants specifically deny that Plaintiff is able to pursue this litigation and/or the class claims under the Arbitration Agreement/Class Waiver, which requires individual arbitration of her claims and precludes her participation in any multi-plaintiff, class, collective, and/or representative actions. Bass Pro further admits that some or all of the putative members of Plaintiff's proposed class also executed the Arbitration Agreement/Class Waiver and are thus excluded from participation in this litigation. Defendants deny the remaining allegations in Paragraph 51.**

52. <u>Superiority of Class Action</u>: Class treatment is superior to individual treatment, as it will permit a large number of similarly situated persons to prosecute their respective class claims in a single forum, simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

**ANSWER: Defendants deny the allegations in Paragraph 52. Answering further, Defendants specifically deny that Plaintiff is able to pursue this litigation and/or the class claims under the Arbitration Agreement/Class Waiver, which requires individual arbitration of her claims and precludes her participation in any multi-plaintiff, class, collective, and/or representative actions. Bass Pro further admits that some or all of the putative members of Plaintiff's proposed class also executed the Arbitration Agreement/Class Waiver and are thus excluded from participation in this litigation.**

53. To the extent not all issues or claims, including the amount of damages, can be resolved on a class-wide basis, Plaintiff invokes Federal Rule of Civil Procedure 23(c)(4),

reserving the right to seek certification of a class action with respect to particular issues, and Federal Rule of Civil Procedure 23(c)(5), reserving the right to divide the class into subclasses.

**ANSWER: The allegations in Paragraph 53 are legal conclusions and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law. Defendants further deny that a class should be certified or that Plaintiff should be appointed as the class representative. Defendants specifically deny that Plaintiff is able to pursue this litigation and/or the class claims under the Arbitration Agreement/Class Waiver, which requires individual arbitration of her claims and precludes her participation in any multi-plaintiff, class, collective, and/or representative actions. Bass Pro further admits that some or all of the putative members of Plaintiff's proposed class also executed the Arbitration Agreement/Class Waiver and are thus excluded from participation in this litigation. Defendants deny any remaining allegations in Paragraph 53.**

### COUNT I – ERISA STATUTORY VIOLATION
**Unlawful Surcharge – Failure to Provide a Reasonable Alternative Standard**
*By Plaintiff and the Class*

54. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

**ANSWER: Defendants incorporate by reference their answers to Paragraphs 1 through 53 as if fully set forth herein.**

55. To enroll in the Plan, Plaintiff and class members were required to pay a tobacco surcharge in the amount of $40 per week, or $2,080 per year beginning in plan year 2024, and $30 per week, or $1,560 in prior plan years.

**ANSWER: Defendants admit that Plaintiff paid a tobacco surcharge effective January 1, 2023. Defendants further admit that the tobacco surcharge for 2023 was $30 per week and, beginning on January 1, 2024, the tobacco surcharge increased to $40 per week. Defendants deny the remaining allegations in Paragraph 55.**

56. Bass Pro's tobacco surcharge is not and was not a permissible wellness program, because it did not provide for a reasonable alternative standard, in that:

   a. A tobacco user could not avoid the surcharge by simply completing a designated smoking cessation program; rather, he or she was required to actually quit smoking for a period of ninety days, and to remain tobacco-free, before the surcharge would be removed; and

   b. A tobacco user who stopped smoking for a period of ninety days would be eligible to have the surcharge removed going forward but would not be reimbursed for surcharge payments already made during that plan year, and thus would not be eligible to receive the "full reward" of the tobacco surcharge program, that being a $1,560 or $2,080 reduction in premium costs to maintain medical coverage.

**ANSWER: Defendants deny the allegations in Paragraph 56 and its subparts.**

57. Bass Pro cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

**ANSWER: The allegations in Paragraph 57 are legal conclusions, arguments, and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations in Paragraph 57. Defendants specifically deny that the tobacco surcharge was discriminatory or unlawful.**

58. Bass Pro's tobacco surcharge has discriminated against, and continues to discriminate against, Plan participants based on a health status-related factor is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

27

**ANSWER:** The allegations in Paragraph 58 are legal conclusions, arguments, and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations in Paragraph 58. Defendants specifically deny that the tobacco surcharge was discriminatory or unlawful.

59. 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

**ANSWER:** The allegations in Paragraph 59 are legal conclusions and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law. Answering further, Defendants admit that, under the Arbitration Agreement/Class Waiver, Plaintiff must arbitrate her ERISA claims against Defendants. Additionally, Defendants deny that Plaintiff is able to pursue this litigation and/or the class claims under the Arbitration Agreement/Class Waiver, which requires individual arbitration of her claims and precludes her participation in any multi-plaintiff, class, collective, and/or representative actions.

60. Plaintiff and class members were required to pay an illegal fee, and Bass Pro collected that fee from them in violation of the law. Equity requires that those funds be returned.

**ANSWER:** Defendants deny the allegations in Paragraph 60.

### COUNT II – ERISA STATUTORY VIOLATION
**Unlawful Surcharge – Failure to Provide Required Notice**
*By Plaintiff and the Class*

61. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

**ANSWER: Defendants incorporate by reference their answers to Paragraphs 1 through 60 as if fully set forth herein.**

62.     To enroll in the Plan, Plaintiff and class members were required to pay a tobacco surcharge in the amount of $40 per week, or $2,080 per year beginning in plan year 2024, and $30 per week, or $1,560 in prior plan years.

**ANSWER: Defendants admit that Plaintiff paid a tobacco surcharge effective January 1, 2023. Defendants further admit that the tobacco surcharge for 2023 was $30 per week and, beginning on January 1, 2024, the tobacco surcharge increased to $40 per week. Defendants deny the remaining allegations in Paragraph 62.**

63.     Bass Pro's tobacco surcharge is not and was not a permissible wellness program, because Bass Pro did not give statutorily required notice of reasonable alternative standard, in that:

a. The Plan's written materials discussed the tobacco surcharge, but did not disclose the availability of an alternative standard—such as a smoking cessation program— by which the surcharge could be avoided, and instead stated that the surcharge could be avoided only by actually quitting smoking for a period of ninety days and remaining tobacco-free;

b. The Plan's written materials discussed the tobacco surcharge, but did not notify participants and beneficiaries that they would be eligible to receive the full reward of the tobacco surcharge program for the plan year, including the retroactive reimbursement of any surcharge fees already paid that plan year; and

c. The Plan's written materials discussed the tobacco surcharge but did not include a statement that recommendations of an individual's personal physician will be accommodated in conjunction with the formation of a reasonable alternative standard.

**ANSWER: Defendants deny the allegations in Paragraph 63 and its subparts.**

29

64.     Bass Pro cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

**ANSWER:  Defendants deny the allegations in Paragraph 64.**

65.     Bass Pro's tobacco surcharge has discriminated against, and continues to discriminate against, plan participants based on a health status-related factor is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

**ANSWER:  The allegations in Paragraph 65 are legal conclusions, arguments, and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations in Paragraph 65. Defendants specifically deny that the tobacco surcharge was discriminatory or unlawful.**

66.     29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

**ANSWER:     The allegations in Paragraph 66 are legal conclusions and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law. Answering further, Defendants admit that, under the Arbitration Agreement/Class Waiver, Plaintiff must arbitrate her ERISA claims against Defendants. Additionally, Defendants specifically deny that Plaintiff is able to pursue this litigation and/or the class claims under the Arbitration Agreement/Class Waiver, which requires individual arbitration of her claims and precludes her participation in any multi-plaintiff, class, collective, and/or representative actions.**

67. Plaintiff and class members were required to pay an illegal fee, and Bass Pro collected that fee from them in violation of the law. Equity requires that those funds be returned.

**ANSWER: Defendants deny the allegations in Paragraph 67.**

### COUNT III – ERISA BREACH OF FIDUCIARY DUTY
### 29 U.S.C. § 1109
*By Plaintiff and the Class, On Behalf of the Plan*

68. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

**ANSWER: Defendants incorporate by reference their answers to Paragraphs 1 through 67 as if fully set forth herein.**

69. At all times relevant to this lawsuit, Bass Pro was the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting management of the medical benefits plans and disposition of their assets by holding in trust the funds collected from the tobacco surcharge, and had discretionary authority and discretionary responsibility in the administration of the medical plan.

**ANSWER: Defendants admit that Bass Pro Group is the plan administrator for the Plan. The remaining allegations in Paragraph 69 are legal conclusions and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the remaining allegations in Paragraph 69.**

70. Bass Pro breached its fiduciary duty by assessing and collecting the tobacco surcharge in violation of the law and in violation of the terms of the Plan, as the receipt of additional funds reduced its own costs associated with funding the plan and forestalled its own obligations to make contributions thereto.

31

**ANSWER: Defendants deny the allegations in Paragraph 70.**

71. Upon information and belief, Bass Pro's responsibility with respect to the funding of the Plan's claims and administrative expenses relating to the Plan's self-funded arrangements equaled the amount by which the Plan's claims and administrative expenses exceeded all participant contributions, including the tobacco surcharge funds, Bass Pro's collection of the tobacco surcharge diminished the amount it had to contribute to the plan, thereby benefiting itself and harming the Plan.

**ANSWER: Defendants deny the allegations in Paragraph 71.**

72. As a result of the imposition of the tobacco surcharge, Bass Pro enriched itself at the expense of the Plan, thereby resulting in it receiving a windfall.

**ANSWER: Defendants deny the allegations in Paragraph 72.**

73. Bass Pro breached its fiduciary duties under ERISA in that it:

   a. failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A);

   b. failed to discharge its duties in accordance with the documents and instruments governing the Plan insofar as the documents and instruments are consistent with ERISA, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(D);

   c. caused the Plan to engage in transactions that Bass Pro knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the health plan, in violation of ERISA. *See* 29 U.S.C. § 1106(a)(1)(D);

   d. dealt with assets of the Plan in Bass Pro's own interests in violation of ERISA. *See* 29 U.S.C. § 1106(b)(1);

   e. acted on behalf of a party whose interests were averse to the interests of the Plan or the interests of its participants and beneficiaries, in violation of ERISA. *See* 29 U.S.C. § 1106(b)(2); and

   f. caused the Plan to require participants to pay a premium or contribution which was greater than such premium or contribution for a similarly situated participant enrolled in the health plan on the basis of a health status-related factor in relation to the participant or to an individual enrolled under the health plan as a dependent of the individual, in violation of ERISA. *See* 29 U.S.C. § 1182(b).

32

**ANSWER:  Defendants deny the allegations in Paragraph 73 and its subparts.**

74.    As a result of these breaches, and pursuant to 29 U.S.C. § 1109, Bass Pro is liable to make good to the plan all losses to the Plan resulting from its breaches, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan and/or a constructive trust all profits it acquired through its violations alleged herein and which it made through use of assets of the plan, and for such other equitable or remedial relief as is proper.

**ANSWER:  Defendants deny the allegations in Paragraph 74.**

75.    Plaintiff is authorized to bring this action on behalf of the plan pursuant to 29 U.S.C. § 1132(a)(2).

**ANSWER: The allegations in Paragraph 75 are legal conclusions and interpretations to which no response is required. To the extent a response is necessary, Defendants deny the allegations to the extent they misstate, mischaracterize, or misinterpret the applicable law. Answering further, Defendants admit that, under the Arbitration Agreement/Class Waiver, Plaintiff must arbitrate her ERISA claims against Defendants. Additionally, Defendants specifically deny that Plaintiff is able to pursue this litigation and/or the class claims under the Arbitration Agreement/Class Waiver, which requires individual arbitration of her claims and precludes her participation in any multi-plaintiff, class, collective, and/or representative actions.**

## REQUEST FOR RELIEF

Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in her favor and against Bass Pro as follows:

A. That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative, and appoint Plaintiff's counsel as Class Counsel;

33

B.  That the Court order Bass Pro to reimburse all persons who paid the tobacco surcharge within the relevant limitations period;

C.  That the Court order disgorgement and/or restitution of all payments unlawfully assessed by Bass Pro, or, alternatively, the profits earned by Bass Pro in connection with its receipt of such unlawful fees;

D.  That the Court grant a declaratory judgment holding that the acts of Bass Pro described herein violate ERISA and applicable law, as well as the terms of the plan;

E.  That the Court enter a permanent injunction against Bass Pro prohibiting it from collecting a tobacco surcharge unless and until the company revises the surcharge to comply with all ERISA statutory requirements;

F.  That the Court order Bass Pro to provide all accountings necessary to determine the amounts it must make good to the plan and to plan participants and beneficiaries;

G.  That the Court surcharge against Bass Pro all funds it collected in violation of ERISA and the terms of the plan;

H.  That the Court find and adjudge that Bass Pro is liable to make good to the Plan all losses to the Plan resulting from each breach of fiduciary duties, to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty, and grant all other proper relief authorized by 29 U.S.C. § 1109, including removal and replacement of the fiduciary;

I.  That the Court impose a constructive trust on profits received by Bass Pro as a result of fiduciary breaches committed by it or for which it is liable, upon which Plaintiff and the class can make claims for equitably vested benefits;

J.  That the Court award Plaintiff and the class all damages available at law in an amount to be determined at trial;

K.  That the Court award reasonable attorneys' fees, costs, and expenses as provided by law;

L.  That the Court order the payment of interest to the extent it is allowed by law; and

M.  That the Court grant all other equitable, remedial, and legal relief as it deems just and proper under the circumstances.

**<u>ANSWER</u>:  Defendants deny that Plaintiff is entitled to any relief whatsoever based on the allegations in her Complaint or otherwise. Defendants specifically deny that Plaintiff is entitled to the relief requested in ¶¶ (A)-(M), above. Defendants pray that the Court deny Plaintiff's requests for relief and instead enter judgment in favor of Defendants, dismiss Plaintiff's claims with prejudice, preclude Plaintiff's participation in any multi-plaintiff, class, collective, and/or representative actions, order Plaintiff's claims to arbitration, award Defendants their attorneys' fees and costs, and award Defendants all other appropriate relief.**

34

<strong><u>DEMAND FOR JURY TRIAL</u></strong>

Plaintiff hereby requests a trial by jury of all issues so triable.

<strong><u>ANSWER</u>: Defendants deny Plaintiff is entitled to a jury trial on any claim.</strong>

<strong><u>AFFIRMATIVE AND ADDITIONAL DEFENSES</u></strong>

Defendants assert the following defenses, each as a separate and distinct defense to Plaintiff's alleged causes of action, as well as to the entire Complaint. Defendants do not assume the burden of proving any defense asserted that is adjudged not to be an affirmative defense. Defendants reserve the right to assert such other further defenses of which they may become aware through discovery or otherwise:

1. Any allegation not specifically admitted previously in this Answer is now denied.

2. Plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief may be granted.

3. This Court lacks subject matter or personal jurisdiction over Plaintiff and over Plaintiff's claims, and those of the members of the putative class she seeks to represent.

4. Plaintiff's lawsuit is improperly brought in this judicial forum. Arbitration is the exclusive forum for adjudication of this dispute.

5. Plaintiff's claims, and those of some or all of the members of the putative class she seeks to represent, must be arbitrated pursuant to the Mutual Agreement Regarding Arbitration and Class Claims.

6. Plaintiff's claims and/or requested relief, and some or all those of the members of the putative class she seeks to represent, are barred by the Mutual Agreement Regarding Arbitration and Class Claims.

35

7.    Pursuant to the Mutual Agreement Regarding Arbitration and Class Claims, Plaintiff and of some or all of the members of the putative class she seeks to represent are required to pursue their claims, if any, solely in individual arbitration and are precluded from participating in any multi-plaintiff, class, collective, and/or representative actions.

8.    BPS Direct, LLC had no involvement in the events allegedly giving rise to this dispute and is not a proper defendant in this litigation.

9.    Plaintiff's claims, and those of the members of the putative class she seeks to represent, are barred in whole or in part because Defendants have not breached any fiduciary duties.

10.    Plaintiff's claims, and those of the members of the putative class she seeks to represent, are barred in whole or in part because Defendants did not fail to perform any applicable specification of duty, express or implied, under ERISA.

11.    Plaintiff's claims, and those of the members of the putative class she seeks to represent, for injunctive and/or equitable relief, are barred because there is an adequate remedy at law by way of a claim under 29 U.S.C. § 1132(a)(1)(B).

12.    Plaintiff's claims, and those of the members of the putative class she seeks to represent, under 29 U.S.C. §§ 1132(a)(2) and (3) are barred because the relief she seeks can be obtained by a claim under 29 U.S.C. § 1132(a)(1)(B).

13.    Plaintiff's claims, and those of the members of the putative class she seeks to represent, are barred in whole or in part due to the applicable statutes of limitations or repose. The extent the Complaint seeks relief for any alleged conduct that occurred outside of the applicable limitations or repose periods, whether with respect to Plaintiff or members of the putative class she seeks to represent, such claims are time-barred under ERISA or other applicable law.

14.     Plaintiff's claims and those of the members of the putative class she seeks to represent, arise under ERISA. To the extent the Complaint makes claims and seeks remedies not provided for under ERISA, those claims and those remedies are preempted and/or barred because not part of ERISA's exclusive and reticulated remedial scheme.

15.     Plaintiff's claims, and those of the members of the putative class she seeks to represent, are barred in whole or in part because Defendants have fully performed any and all contractual, statutory, regulatory, or other duties owed under applicable law.

16.     This suit cannot be maintained as a class action, and Plaintiff cannot meet the standards necessary to certify a class action because she is not similarly situated to the putative class she seeks to represent. Likewise, Plaintiff's claims, and those of the members of the putative class she seeks to represent, are not similarly situated to one another. Plaintiff's claims and alleged damages require individualized inquiries and proof, and are subject to mandatory, individual arbitration, all of which require separate proceedings.

17.     Plaintiff's Complaint fails to identify a cognizable class under Fed. R. Civ. P. 23. Plaintiff failed to adequately and properly identify with particularity the putative class she purports to represent. Plaintiff and/or her counsel cannot adequately represent the purported class. Plaintiff's claims are not typical of those of the putative class. Plaintiff's claims do not involve common issues of law or fact that predominate over the remaining issues of law or fact. The putative class of plaintiffs is not so numerous that a class action is appropriate. A class action is not a superior method of resolving the claims of the putative class. Plaintiff is precluded by operation of the Mutual Agreement Regarding Arbitration and Class Claims from participating in any multi-plaintiff, class, collective, and/or representative actions.

18.     Individual issues predominate, and therefore class action is improper.

19. Certain interests of the alleged putative class Plaintiff purports to represent are in conflict with the interests of all or certain sub-groups of the members of the alleged putative class, including but not limited to the fact that Plaintiff is bound to pursue her claims in mandatory, individual arbitration and is precluded from participating in any multi-plaintiff, class, collective, and/or representative actions by operation of the Mutual Agreement Regarding Arbitration and Class Claims.

20. If this Court were to certify this action as a class action and award damages (which it should not), any award of liquidated, multiple, duplicate, or punitive damages would deny Defendants due process of law.

21. Any alleged acts or omissions giving rise to this action occurred in good faith and with reasonable grounds for believing the actions or omissions were not in violation of the law.

22. Plaintiff's claims, with respect to herself or members of the putative class, are barred in whole or in part, under the doctrines of waiver, estoppel, ratification, laches, release, preemption, forfeiture, and/or unclean hands.

23. Plaintiff's claims, and those of the members of the putative class she seeks to represent, fail because Plaintiff and members of the putative class lack standing and/or have suffered no concrete harm entitling them to relief.

24. Plaintiff's claims, and those of the members of the putative class she seeks to represent, are barred, in whole or in part, by the doctrine of accord and satisfaction.

25. Any award of attorneys' fees or costs, which the Court should not award, must be "reasonable" or "reasonable and necessary," and must not include fees or costs related to time the attorneys spent advancing unsuccessful claims.

38

26.     Plaintiff's claims, and those of the members of the putative class she seeks to represent, are barred, in whole or in part, by their lack of statutory standing as participants, beneficiaries, or otherwise, to bring claims under ERISA.

27.     Plaintiff's claims, and those of the members of the putative class they seek to represent, are barred, in whole or in part, to the extent they failed to exhaust the Plan's administrative remedies and failed to avail themselves of the applicable claims and appeal procedures set forth in the Plan.

28.     The purported relief sought by Plaintiff, including any monetary remedies, is not recoverable under ERISA, including because such relief does not constitute "appropriate equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

29.     Defendants were not, or were not acting as, fiduciaries within the meaning of ERISA with respect to all or some of the purported actions alleged by Plaintiff and/or members of the putative class she seeks to represent.

30.     Plaintiff's claims, and those of the members of the putative class she seeks to represent, raise issues of plan design or amendment, Defendants are immune from fiduciary liability under the settlor function doctrine.

31.     Plaintiff's claims, and those of the members of the putative class she seeks to represent, are barred, in whole or in part, to the extent they failed to mitigate any damages or losses claimed by them.

32.     Plaintiff's claims, and those of the members of the putative class she seeks to represent, do not involve plan assets.

39

33. Plaintiff's claims, and those of the members of the putative class she seeks to represent, are barred because Defendants complied with the terms of any applicable plan and governing plan documents.

34. No benefits are owed to Plaintiff under the terms and conditions of any applicable plan.

35. Plaintiff's claims, and those of the members of the putative class she seeks to represent, are barred because the plan has not suffered any actual injury or damage.

36. Plaintiff is not entitled to a jury trial under ERISA.

37. Defendants reserve the right to amend this Answer and Additional Defenses as discovery and investigation continue.

WHEREFORE, Defendants deny that Plaintiff is entitled to any relief herein, and further pray that Plaintiff take nothing by her Complaint, for reimbursement of its reasonable attorneys' fees and costs, for a dismissal of the Complaint with prejudice, and for all other just and proper relief.

40

Dated:  September 10, 2024.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Cristin J. Mack* .
Mark E. Schmidtke, *pro hac vice*
56 S. Washington St., Suite 302
Valparaiso, IN 46383
Phone: 219-242-8668
Fax: 219-242-8669
mark.schmidtke@ogletree.com

-and-

Cristin J. Mack
7700 Bonhomme Avenue, Suite 650
St. Louis, MO  63105
Telephone:  314-802-3935
Facsimile:  314-802-3936
cristin.mack@ogletree.com
***Attorneys for Defendants***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 10th day of September, 2024 the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

| | |
|---|---|
| Caleb J. Wagner | Ryan L. McClelland |
| George A. Hanson | McClelland Law Firm, P.C. |
| Alexander T. Ricke | The Flagship Building |
| Stueve Siegel Hanson, LLP | 200 Westwoods Drive |
| 460 Nichols Road, Suite 200 | Liberty, MO 64068 |
| Kansas City, MO 64112 | Email: ryan@mcclellandlawfirm.com |
| wagner@stuevesiegel.com; | |
| hanson@stuevesiegel.com; | |
| ricke@stuevesiegel.com | |

**ATTORNEYS FOR PLAINTIFFS**

/s/ *Cristin J. Mack*
***Attorney for Defendants***

41

64134231.v1-Ogletree